## UNITED STATES v. FREEDMAN et al.

(District Court, E. D. Pennsylvania. November 19, 1920.)

No. 100.

1. **Receiving stolen goods** ⇌8(3)—**Evidence sustaining verdict.**
   In prosecution for receiving goods stolen while the subject of interstate commerce, evidence *held* to show that the goods received by accused were the goods which had been stolen.

2. **Criminal law** ⇌381—**Effect of good reputation evidence stated.**
   Good reputation does not exculpate a guilty defendant, but may persuade the jury not to find him guilty, and is evidence highly regarded by the law on the question of his guilt.

3. **Criminal law** ⇌812—**Instruction as to law enforcement held not error.**
   An instruction dealing with the importance of the case, because of the "letting down of the bars" protecting property rights and the lowering of the standards of honesty, *held* not erroneous.

4. **Criminal law** ⇌508(1), 780(1)—**Testimony of co-conspirator competent, but jury must be instructed to scrutinize such evidence.**
   In prosecution for receiving goods stolen while the subject of interstate commerce, it was not error to instruct the jury that they might found their verdict on the testimony of the thieves for such witnesses are competent; but the trial judge must warn the jury of the danger of giving credit to such testimony and of their duty to closely scrutinize it.

5. **Criminal law** ⇌786(3)—**Instruction on defendant's testimony not error.**
   Instruction telling the jury to listen to accused's testimony and to give it its full weight, but to weigh it with the thought in mind that he was interested, was not error.

Joseph Freedman and others were prosecuted for receiving stolen property, the subject of interstate commerce. Sur motion for new trial. Motion denied.

Chas. D. McAvoy, U. S. Atty., and Robert J. Sterrett, Special Asst. U. S. Atty., both of Philadelphia, Pa.

David Phillips, of Philadelphia, Pa., for defendants.

⇌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DICKINSON, District Judge. There were incidents connected with the trial of this cause from which the inference could be drawn, or which would at least induce one to suspect, that the defendant had refused to buy the stolen property from the thief, but was willing to buy it from a third party to whom it had been passed over by the thief. The thought back of the distinction thus made is that in the first case instanced the defendant would be guilty of receiving stolen property, which was the subject of interstate commerce, but that in the second instance, although he would be guilty of receiving stolen property, he would not be guilty of receiving stolen property which was the subject of interstate commerce, as the property would have passed beyond the domain of interstate commerce when he received it.

The jury were instructed that if the defendant had taken over the property, knowing it to have been stolen, and if, in point of fact, it had been stolen while the subject of interstate commerce, the defendant might be convicted. No complaint is now made of this ruling, and we pass to such comments as are called for by the other points raised. We feel the duty of doing this, because counsel for defendant has deemed these points worthy of discussion by submitting a well-considered and very satisfactory brief. We dispose of the points in the order discussed by counsel.

[1] 1. The first point is that there was no evidence that the goods received by the defendant were the goods which had been stolen. We accept the doctrine of law invoked that this fact must be found, and of course can only be found from the evidence. The jury, however, have found it, and we think the evidence justified the finding. The thieves testified that they had stolen goods, and that what they had stolen had been handed over to the first receiver. There was evidence that what this first receiver had received had been passed over to the defendant, and that the goods were stolen while in transit across state lines.

2. The second point made is that the court erroneously instructed the jury that they were the judges of the law as well as the facts. In a sense this was the effect of the charge. The charge, however, was to point out to the jury their duty to take the law from the court. This was made necessary by the argument which had been addressed to them, in which the jury had been reminded of their power and practical duty to render a general verdict of guilty or not guilty. The practical effect of this, of course, is to make them the judges of the law in case they acquit. The distinction, however, between what they had the power to do and what they ought to do was clearly stated, and they were as clearly told that they ought to take their law from the court. The charge is criticized as one drawing a distinction which the jury could neither comprehend nor grasp, so as to apply. We do not think so, and independently of this the defendant is fully protected against erroneous instruction on the law of the case if the jury followed the instructions, and was the beneficiary of their error if they did not.

[2] 3. *Character Evidence.*—We see no error in the charge of the court upon this branch of the case. The real test of the value of reputation was given the jury, and we still think correctly. The difference-

between the charge to the jury in this case and the charges reviewed in the cited cases, we think, is indicated by a contrast of the charges. Good reputation does not exculpate a guilty defendant. It may persuade the jury not to find him guilty, and is evidence highly regarded by the law upon the question of his guilt.

[3] 4. *Importance of the Case.*—Strong objection is made to the part of the charge dealing with the importance of the case, because of the "letting down of the bars" protecting property rights and the lowering of the standards of honesty. Comments of the kind are necessarily left somewhat to the exercise of the discretion of the trial judge. Care was taken to couple the duty of law enforcement with the other duty of seeing to it that no innocent man was convicted. In point of fact this instruction was given in justice to the defendant. It is a matter of general comment that crimes of this kind are far too prevalent. It was proper to remind the jury not to permit the necessity for law enforcement to operate against the individual defendant on trial.

5. *Technical Defense.*—This refers to the defense suggested by certain incidents of the trial, but not made by counsel for the defendant. It rested upon the proposition of fact that the stolen goods, when the defendant dealt with them, were not the subject of interstate commerce; in other words, that if goods in transit in interstate commerce were stolen, the one who with guilty knowledge received them from the thief would be guilty of an offense against the laws of the United States, but if he received them from one who had himself received them from the thief, then he would not be guilty of any offense against the laws of the United States because the goods had ceased to partake of an interstate commerce character. The jury were flatly told that no defence could be based upon this distinction. If this instruction was erroneous, of course, there would be reversible error in it. As no complaint is now made of this as an error of law, we fail to see how the instruction could have prejudiced the defendant. The instruction then comes down to the simple proposition that the distinction should be disregarded, and the cause decided upon the substantial issues of whether the defendant had received the property knowing it to have been stolen, and that in fact it had been stolen when in transit as an interstate commerce commodity. As the point is not now made, we do not discuss the question of whether or not the instructions were in accordance with the law.

[4] 6. *Co-conspirators.*—The jury were instructed, as complained of, that they might found their verdict upon the testimony of the thieves. We understand the law of the United States to be that such witnesses are competent and the testimony admissible, but it is the duty of the trial judge to warn the jury of the danger of giving credit to such testimony and of their duty to closely scrutinize it. This duty we think was performed.

[5] 7. *Defendant's Testimony.*—The complaint made of the comments of the court upon the testimony of the defendant we think unfounded. They were told to listen to his testimony and give to it its

268 F.—42

full weight, but to weigh it with the thought in mind that he was interested.

8. *Contrasts of Testimony.*—The complaint that the court placed the co-conspirators and the defendant in the same boat is a just complaint, if well founded. The testimony of each was placed in juxtaposition, and the very implication of which defendant complains evidently presented itself to the mind of the trial judge, and the attempt was made, and we think successfully, to set the defendant right before the jury. The only difficulty, as we see it, which this case presents, is that of knowing how far it is safe to rely upon tainted testimony. When such testimony comes from a witness, who confesses that he has made statements, and indeed sworn to them, which were in point of fact false, this logical dilemma confronts us: A witness tells us that the things to which he is testifying on trial are true occurrences. But when, in the same breath, he also tells us that other things to which he has sworn were false, he must be characterized in the light most favorable to him as a witness who sometimes tells the truth, but who sometimes does not, and we are under the unsatisfying necessity of taking his word for it as to when he is telling the truth and when he is not.

This is the criticism which is made, and justly made, of the testimony of some of the witnesses against the defendant. The force of the criticism must be admitted, and due weight given to it. There is beyond all question a poison in such testimony. The only antidote, however, is to trust to the good sense and discriminating judgment of a jury. The law has made them the judges of the truth or falsity, and human ingenuity has not yet devised a better test of truth than that afforded by the verdict of a jury. There is, of course, always the possibility of error; but it never happens that any defendant is convicted upon such testimony, unless his own conduct has given it a credence and credibility which it would not otherwise possess. Usually, as in this case, the unquestioned evidence points directly and menacingly to the defendant, and the tainted testimony performs the part of making of a moral conviction a legal certainty.

The motion for a new trial is denied, and the United States has leave to move for sentence.